**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ALTO DYNAMICS, LLC, | CIVIL ACTION NO. 2:22-cv-00350 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| ROADGET BUSINESS PTE. LTD., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Alto Dynamics, LLC ("Alto Dynamics" or "Plaintiff") files this complaint against

Defendant Roadget Business Pte. Ltd. ("Roadget" or "Defendant") alleging, based on its own

knowledge as to itself and its own actions, and based on information and belief as to all other

matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following

United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and

Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**,

**Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,604,100 | Method For Converting Relational Data Into A Structured Document |
| B. | 6,662,190 | Learning Automatic Data Extraction System |
| C. | 7,152,018 | System And Method For Monitoring Usage Patterns |
| D. | 7,392,160 | System And Method For Monitoring Usage Patterns |
| E. | 7,657,531 | Systems And Methods For State-Less Authentication |
| F. | 8,051,098 | Systems And Methods For State-Less Authentication |
| G. | RE46,513 | Systems And Methods For State-Less Authentication |

2.      Alto Dynamics seeks injunctive relief and monetary damages.

## PARTIES

3.    Alto Dynamics, LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 4275 Peachtree Corners Circle, Suite 230, Peachtree Corners, Georgia 30092 (Gwinnett County).

4.    Roadget is a Private Company Limited By Shares organized under the laws of Singapore with its corporate headquarters located at 7 Temasek Boulevard, #12-07, Suntec Tower One, Singapore 038987.

5.    Roadget may be served at its corporate headquarters.

6.    Defendant operates its business in the United States under the brand name "SHEIN" and the website https://us.shein.com through which it sells products that include clothing and fashion accessories.

## JURISDICTION AND VENUE

7.    Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.    Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continue to commit acts of infringement in this District directly, through

intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

11.   Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Instrumentalities and inducement of third parties to use the Accused Instrumentalities.

12.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is not a resident of the United States.

## THE ACCUSED INSTRUMENTALITIES

13.   Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

14.   Based upon public information, Roadget owns, operates, advertises, and/or controls the website https://us.shein.com and associated hardware, software, and functionality that among other features, allows users to view, search, save, and purchase items on Defendant's online sales platform, tracks user activities and preferences (*e.g.*, using cookies), provides website and user authentication (*e.g.*, using user login processes and secured sessions), employs internal company analytics that it offers to its employees and staff, delivers customized advertisements and electronic product placements, provides a browsing history and the ability to query and re-select items, and allows for the processing of resumes for job applications, and with respect to at least some of the foregoing features, provides them through its mobile apps available through the App Store and Google Play  (the "Accused Instrumentalities").  *See* **Exhibit H**, **Exhibit I,** and **Exhibit J;** *see* **Exhibit K** and **Exhibit L**.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,604,100

15.     Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

16.     The USPTO duly issued U.S. Patent No. 6,604,100 (the "'100 patent") on August 5, 2003, after full and fair examination of Application No. 09,778,749, which was filed on February 8, 2001.  *See* **Ex. A**, at A-1.  A Certificate of Correction was issued on November 25, 2003.  *See id.,* at A-18.

17.     Alto Dynamics owns all substantial rights, interest, and title in and to the '100 patent, including the sole and exclusive right to prosecute this action and enforce the '100 patent against infringers, and to collect damages for all relevant times.

18.     The claims of the '100 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operations for viewing and querying relational data.

19.     The written description of the '100 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art priority date. The '100 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

20.     Defendant has infringed one or more claims of the '100 patent by using, providing, supplying, or distributing the Accused Instrumentalities.

21.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '100 patent.

22.     For example, the Accused Instrumentalities employ database searching and viewing capabilities, including by performing, and allowing users to perform, a method for converting relational data from a relational database into a structured document, comprising the steps of storing a view query that defines a structured document view of the relational database, a structure of the view query being independent of a structure of data in the relational database; receiving a user query against the structured document view; forming an executable query by determining a composition of the view query and the user query; partitioning the executable query into a data extraction portion and a construction portion; transmitting the data extraction portion to the relational database; receiving at least one tuple stream from the relational database according to the data extraction portion; and merging the at least one tuple stream and the construction portion to generate a structured document, wherein the structured document view is capable of defining a document of arbitrary nesting depth.

23.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

24.     Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

25.     Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '100 patent.

26.      Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,662,190

27.      Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

28.      The USPTO duly issued U.S. Patent No. 6,662,190 (the "'190 patent") on December 9, 2003, after full and fair examination of Application No. 09/812,425, which was filed on March 20, 2001.  *See* **Ex. B**, at B-1.

29.      Alto Dynamics owns all substantial rights, interest, and title in and to the '190 patent, including the sole and exclusive right to prosecute this action and enforce the '190 patent against infringers, and to collect damages for all relevant times.

30.      The claims of the '190 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of database searching techniques and systems.

31.      The written description of the '190 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '190 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

32.     Defendant has infringed one or more claims of the '190 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities, including, but not limited to, processing the resumes uploaded to its online sales platform and that platform's provision of a browse history to its users, along with the ability to re-select items.

33.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '190 patent.

34.     For example, the Accused Instrumentalities employ text mining capabilities, including by performing, and allowing users to perform, through its resume uploading feature(s), a method for data extraction of a text file to a record file, said method comprising the steps of identifying an area of interest in a text file, parsing said area of interest in order to identify a list of values of attributes in said area of interest, recognizing a first set of values in said list that match values contained in an attribute value vocabulary, forming a record using said first set of values, gleaning a second set of values in said list that do not match values contained in said attribute value vocabulary, and adding said second set of values to said record.

35.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

36.     Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

37.     Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '190 patent.

38.    Alto Dynamics has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant  is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,152,018

39.    Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

40.    The USPTO duly issued U.S. Patent No. 7,152,018 (the "'018 patent") on December 19, 2006, after full and fair examination of Application No. 10/499,578, which was filed on December 18, 2002.  *See* **Ex. C**, at C-1.  A certificate of correction was issued on December 19, 2006.  *Id*., at C-11-12.

41.    Alto Dynamics owns all substantial rights, interest, and title in and to the '018 patent, including the sole and exclusive right to prosecute this action and enforce the '018 patent against infringers, and to collect damages for all relevant times.

42.    The claims of the '018 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for monitoring, recording and analysis of user activity.

43.    The written description of the '018 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '018 patent also identifies and circumscribes all information necessary for a skilled

artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

44.     Defendant has infringed and continue to infringe one or more claims of the '018 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities, including, but not limited to, Defendant's employ of cookies for its online sales platform.

45.     Defendant has directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '018 patent.

46.     For example, the Accused Instrumentalities track user activities and preferences (*e.g.*, using cookies), including by performing, and allowing users to perform a method of monitoring user usage patterns of a system, comprising the steps of providing at least one state object, the object including a profile representative of user usage, storing the state object at a client location, passing, to a central server, the state object with each subsequent interaction initiation, and receiving, from the central server, the state object along with the response of the central server, wherein the profile is modified, to reflect the interaction between the client location and the central server, by one of one or more scripts within or included in information/resources provided to the client location by the central server, and one or more programs executed at the client location, thus precluding manipulation of the profile by the server.

47.     Since at least the time of receiving this Complaint, Defendant has also indirectly infringed and continues to indirectly infringe the '018 patent by inducing others to directly infringe the '018 patent.   Defendant has induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '018 patent by using the Accused

Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '018 patent, including, for example, claim 1 of the '018 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '018 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '018 patent.  Defendant's inducement is ongoing.

48.    Since at least the time of receiving this Complaint, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '018 patent. Defendant has contributed and continues to contribute to the direct infringement of the '018 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Instrumentalities to perform the steps of the patented process as described in one or more claims of the '018 patent.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '018 patent, including, for example, claim 1 of the '018 patent.  The special features include, for example, the method recited in claim 1, including all the intermediary steps, that allow the claimed method of monitoring user usage patterns of a system.  The special features constitute a material part of the invention of one or more of the claims of the '018 patent and are

not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

49.    Defendant has had knowledge of the '018 patent at least as of the date when it was notified of the filing of this action.

50.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

51.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

52.    Since at least the time of receiving this Complaint, Defendant's direct and indirect infringement of the '018 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

53.    Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '018 patent.

54.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

55.    Alto Dynamics has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Alto Dynamics has and will continue to suffer this harm by virtue of each Defendant's infringement of the '018 patent. Defendant's actions have interfered with and will interfere with Alto Dynamics' ability to license

technology. The balance of hardships favors Alto Dynamics' ability to commercialize its own ideas and technology. The public interest in allowing Alto Dynamics to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,392,160

56.    Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

57.    The USPTO duly issued U.S. Patent No. 7,392,160 (the "'160 patent") on June 24, 2008, after full and fair examination of Application No. 11/557,170, which was filed on November 7, 2006. *See* **Ex. D**, at D-1.

58.    Alto Dynamics owns all substantial rights, interest, and title in and to the '160 patent, including the sole and exclusive right to prosecute this action and enforce the '160 patent against infringers, and to collect damages for all relevant times.

59.    The claims of the '160 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for monitoring, recording and analysis of user activity.

60.    The written description of the '160 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '160 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

61. Defendant has infringed and continue to infringe one or more claims of the '160 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities, including, but not limited to, Defendant's deployment of cookies through its online sales platform.

62. Defendant has directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '160 patent.

63. For example, the Accused Instrumentalities track user activities and preferences (*e.g.*, using cookies), including by performing, and allowing users to perform a method for monitoring user usage patterns of a system, comprising the steps providing at least one state object, the object including a profile representative of user usage, storing the state object at a client location, passing, to a central server, the state object with each subsequent interaction initiation, and receiving, from the central server, the state object along with the response of the central server, wherein the profile is modified to reflect the interaction between the client location and the central server, and wherein the central server audits the state object/profile passed to it, and performs analysis on the audited profile in order to direct services and/or information suited to the profile to the client location.

64. Since at least the time of receiving this Complaint, Defendant has also indirectly infringed and continues to indirectly infringe the '160 patent by inducing others to directly infringe the '160 patent. Defendant has induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '160 patent by using the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '160 patent, including, for example, claim 1 of the '160 patent.

Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '160 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '160 patent. Defendant's inducement is ongoing.

65.    Since at least the time of receiving this Complaint, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '160 patent. Defendant has contributed and continues to contribute to the direct infringement of the '160 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Instrumentalities to perform the steps of the patented process as described in one or more claims of the '160 patent. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '160 patent, including, for example, claim 1 of the '160 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps, that allow the claimed method of monitoring user usage patterns of a system. The special features constitute a material part of the invention of one or more of the claims of the '160 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

66.    Defendant has had knowledge of the '160 patent at least as of the date when it was notified of the filing of this action.

67.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

68.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

69.     Since at least the time of receiving this Complaint, Defendant's direct and indirect infringement of the '160 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

70.     Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '160 patent.

71.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     Alto Dynamics has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Alto Dynamics has and will continue to suffer this harm by virtue of each Defendant's infringement of the '160 patent. Defendant's actions have interfered with and will interfere with Alto Dynamics' ability to license technology.  The balance of hardships favors Alto Dynamics' ability to commercialize its own ideas and technology.  The public interest in allowing Alto Dynamics to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,657,531

73.     Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

74.     The USPTO duly issued U.S. Patent No. 7,657,531 (the "'531 patent") on February 2, 2010, after full and fair examination of Application No. 11/325,463, which was filed on January 5, 2006.  *See* **Ex. E**, at E-1.  A Certificate of Correction was issued on November 13, 2010.  *See id.,* at E-20.

75.     Alto Dynamics owns all substantial rights, interest, and title in and to the '531 patent, including the sole and exclusive right to prosecute this action and enforce the '531 patent against infringers, and to collect damages for all relevant times.

76.     The claims of the '531 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for authenticating users of program objects in distributed computing environments based on negotiated security contexts.

77.     The written description of the '531 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '531 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

78.     Defendant has infringed one or more claims of the '531 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities,

including, but not limited to, Defendant's employ of secure communication sessions between user computing device and a logon component on its online sales platform.

79.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '531 patent.

80.    For example, the Accused Instrumentalities provide website and user authentication (*e.g.*, using user login processes and secured sessions), including by performing, and allowing users to perform a method of enabling access to a resource of a distributed application server or processing system by a user/client application possessing a valid security-context, comprising the steps of, receiving the security-context and an appended protected security-context renewal request provided by the user to an access authorization component of the application server or processing system, verifying the validity of the security-context and the security-context renewal request, extracting content of both the security-context and the security-context renewal request, comparing current time to an expiration time identifying time of expiration of the security-context, if the expiration time is less than the current time, comparing the security-context renewal request with stored identity and authorization information comprising at least one of a user identifier, an organization identifier, a sub-organization identifier, a key, an authentication certificate, an user location, a user role, and an user position identifying the user to the access authorization component and generating a new symmetric key, and other access and authorization information, generating an updated security-context based on the verifying of the user's identity and authorization and based on the user having requested authority for access to the resource and services; providing the updated security context to the user, and sending the updated security-context and a request for access to the resource and services by the user to the application server or processing system.

81.    On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

82.    Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

83.    Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '531 patent.

84.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,051,098

85.    Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.    The USPTO duly issued U.S. Patent No. 8,051,098 (the "'098 patent") on November 1, 2011, after full and fair examination of Application No. 12/691,547, which was filed on January 21, 2010.  *See* **Ex. F**, at F-1.  A Certificate of Correction was issued on June 12, 2012.  *See id.,* at F-20.

87.    Alto Dynamics owns all substantial rights, interest, and title in and to the '098 patent, including the sole and exclusive right to prosecute this action and enforce the '098 patent against infringers, and to collect damages for all relevant times.

88.    The claims of the '098 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting systems and methods for authenticating users of program objects in distributed computing environments based on negotiated security contexts.

89.    The written description of the '098 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '098 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

90.    Defendant has infringed one or more claims of the '098 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities, including, but not limited to, Defendant's employ of secure communication sessions between user computing device and a logon component on its online sales platform.

91.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '098 patent.

92.    For example, the Accused Instrumentalities provide website and user authentication (*e.g.*, using user login processes and secured sessions), including by performing, and allowing users to perform a method for accessing any of a plurality of resources wherein at least some of the resources do not share a common processing platform, comprising the steps of establishing a secure communication session between a user computing device and a logon component, wherein the secure communication session comprises a temporary, interactive information exchange that is set up and then torn down; verifying logon information provided by the user computing device

to the logon component using the secure communication session and responsively generating a security context to be employed by the user computing device that is unique to a user of the user computing device and necessary to access any of the plurality of resources without requiring any follow-on authorization communications between the accessed resource and the logon component.

93.    On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

94.    Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

95.    Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '098 patent.

96.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. RE46,513**

97.    Alto Dynamics repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

98.    The USPTO duly issued U.S. Patent No. RE46,513 (the "'513 patent") on August 15, 2017, after full and fair examination of Application No. 13/369,112, which was filed on February 8, 2012.  *See* **Ex. G**, at G-1.  The '513 patent is a reissue of U.S. Patent No. 7,020,645, which was issued on March 28, 2006 after a full and fair examination of Application No. 09/839,551, which was filed on April 19, 2001.  *See id.*

99.     Alto Dynamics owns all substantial rights, interest, and title in and to the '513 patent, including the sole and exclusive right to prosecute this action and enforce the '513 patent against infringers, and to collect damages for all relevant times.

100.     The claims of the '513 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods for authenticating users of program objects in distributed computing environments based on negotiated security contexts.

101.     The written description of the '513 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '513 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

102.     Defendant has infringed and continue to infringe one or more claims of the '513 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Instrumentalities, including, but not limited to, Defendant's employ of secure communication sessions between user computing device and a logon component on its online sales platform.

103.     Defendant has directly infringed and continues to indirectly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '513 patent.

104.     For example, the Accused Instrumentalities provide website and user authentication (*e.g.*, using user login processes and secured sessions), including by performing, and allowing

users to perform, a method of enabling access to resources of a processing system, including the steps of establishing a secure communication session between a user desiring access and a logon component of the processing system, verifying that logon information, provided by the user to the logon component during the secure communication session, matches stored information identifying the user to the processing system, generating a security context from the logon information and authorization information that is necessary for access to the resource, wherein the security context comprises a plaintext header and an encrypted body, and the plaintext header comprises a security context ID, a key handle, and an algorithm identifier and key size, providing the security context to the user, and sending, by the user to the processing system, the security context and a request for access to the resource.

105.    Defendant has had knowledge of the '513 patent at least as of the date when it was notified of the filing of this action.

106.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

107.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

108.    Since at least the time of receiving this Complaint, Defendant's direct and indirect infringement of the '513 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

109.    Alto Dynamics or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '513 patent.

110.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Alto Dynamics in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

111.    Alto Dynamics has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Alto Dynamics has and will continue to suffer this harm by virtue of each Defendant's infringement of the '513 patent. Defendant's actions have interfered with and will interfere with Alto Dynamics' ability to license technology.  The balance of hardships favors Alto Dynamics' ability to commercialize its own ideas and technology.  The public interest in allowing Alto Dynamics to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### JURY DEMAND

112.    Plaintiff hereby requests a trial by jury on all issues so triable by right.

### PRAYER FOR RELIEF

113.    WHEREFORE, Alto Dynamics requests that the Court find in its favor and against Defendant, and that the Court grant Alto Dynamics the following relief:

 a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

 b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '160 patent and the '018 patent;

or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '018 patent and the '160 patent by such entities;

c.   Judgment that Defendant accounts for and pays to Alto Dynamics all damages to and costs incurred by Alto Dynamics because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringement of the '018 patent and the '160 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Alto Dynamics its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: September 9, 2022          Respectfully submitted,

By: */s/ James F. McDonough, III*

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@ rhmtrial.com
Email: lynch@ rhmtrial.com

**Attorneys for Plaintiff *ALTO DYNAMICS LLC***

*Admitted to the Eastern District of Texas

**List Of Exhibits**
    A.  US Patent No. 6,604,100
    B.  US Patent No. 6,662,190
    C.  US Patent No. 7,152,018
    D.  US Patent No. 7,392,160
    E.  US Patent No. 7,657,531
    F.  US Patent No. 8,051,098
    G.  US Patent No. RE46,513
    H.  Webpage: us.shein.com
    I.  Webpage: us.shein.com/About-Us-a-117.html
    J.  Webpage: us.shein.com/imprint-a-7 46.html?ref=www&rep=dir&ret=us
    K.  Shein App Available from App Store
    L.  Shein App Available from Google Play